IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KURIAKOSE T. JOSEPH           :           CIVIL ACTION
                                         :           NO. 06-4916
              v.                      :
                                         :
COMMONWEALTH OF PENNSYLVANIA,   :
DEPARTMENT OF ENVIRONMENTAL    :
PROTECTION                          :

O'NEILL, J.                                  November 16, 2009

**MEMORANDUM**

On March 13, 2009, plaintiff Kuriakose T. Joseph filed an amended complaint against defendant Department of Environmental Protection of the Commonwealth of Pennsylvania asserting claims of employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  Before me now are defendant's motion for summary judgment, Joseph's opposition, defendant's reply and plaintiff's sur-reply.  For the reasons set forth below, I will grant defendant's motion for summary judgment.

**BACKGROUND**

**A.    Procedural History**

On September 6, 2007, I granted defendant's motion to dismiss Joseph's Pennsylvania Human Rights Act claim and federal § 1981 claim on the grounds of sovereign immunity.  I also granted defendant's motion to dismiss Joseph's Title VII claim because his employment with defendant terminated on March 4, 2005 and Joseph filed his EEOC charge February 10, 2006 which was outside the applicable 300-day limitations period.  The Court of Appeals vacated my Order dismissing Joseph's Title VII claim as well as my Order denying reconsideration of that

dismissal and remanded the action. Joseph then filed an amended complaint attaching the EEOC

charge questionnaire dated December 27, 2005. On April 15, 2009, in light of the Supreme

Court's opinion in Federal Express Corp. v. Holowecki, -- U.S. --, 128 S. Ct. 1147, 170 L. Ed. 10

(2008), I denied the defendant's motion to dismiss Joseph's Title VII claim.

**B.**     **Factual Background**

Joseph is an adult male born in India. His national origin is Indian and his race is Asian

Indian. He reads and comprehends English very well, but his spoken English is very poor. He

holds a Bachelor of Science degree in Chemistry from India, a Master's degree from the

University of Missouri in Analytical Chemistry, and a Ph.D. in Analytical Chemistry from

Purdue University. He wrote his doctoral thesis while at Penn State University, completed a two-

year post-doctorate at Georgia Institute of Technology in Atlanta and has published articles in the

field of chemistry. During his career, he worked as a senior research scientist for Atofina

Chemicals, Inc. and had prior experience with EPA methodology.

**1.**     **Limited-Term Position**

The events leading to this lawsuit began with Joseph taking the Pennsylvania Civil

Service Exam for Chemist 1 and 2 positions in April 2004. At the end of July/beginning of

August 2004, Joseph was interviewed for a limited term Chemist 1 position by Chemist 4 Lisa

Wilt, Section Chief of the Organic Chemistry section within DEP's Bureau of Laboratories; her

supervisor, Michael Webb participated in the interviews with the candidates and discussed each

candidate with her prior to making her selection. The open position was under Wilt's

supervision. Wilt and Webb also interviewed four other candidates for the position. Joseph was

hired on October 18, 2004. Wilt hired Joseph because of "his years of experience in the

laboratory; the fact that he held a Ph.D. in analytical chemistry; that he had computer knowledge. And all of those things would mean that Mr. Joseph would require less on-the-job training than others that did not have the experience and education." Wilt dep. 19. Joseph's position was originally scheduled to run through July, but the chemist for whom Joseph had been filling in returned early from Iraq and thus the position ended on March 4, 2005.

Joseph was employed by defendant for approximately four-and-one-half months. During this time period, he did not receive a performance evaluation because he was still in his six month probationary period. Chemists in Wilt's unit worked on the five GC/MS (gas chromatography/mass spectrometer) instruments in the lab room. One of Joseph's job duties in his limited term position (and part of the job description for each of the Chemist positions for which he interviewed) was troubleshooting an instrument. Joseph performed troubleshooting on the instruments assigned to him.

Initially, Joseph had to "qualify" to do routine analyses by completing an initial demonstration of competency ("IDC"). This is accomplished by analyzing standard solutions and demonstrating that the results meet DEP criteria. While it is disputed how long the IDC typically takes, it is undisputed that in the four-and-one-half months Joseph worked for DEP he did not achieve his IDC. The reason for his failure to achieve his IDC is disputed. Joseph argues the first and second instruments to which he was assigned both had problems preventing him from achieving results within the acceptable limits for the relative standard of deviation. Defendant argues that Wilt could not determine whether the issue was caused by an instrument problem or Joseph's technique, and presents disputed evidence that other Chemists in the lab were able to achieve accurate results on the instruments assigned to Joseph, indicating that those

instruments did not have problems.

While Joseph was employed with defendant, his supervisor, Wilt, would go for walks with Ms. Tara Upadhyay and Martina McGarvey and the three would discuss supervisory problems. Wilt informed Upadhyay and McGarvey on these walks about Joseph's inability to achieve his IDC and that he was not "qualifying." McGarvey does not recall whether Wilt told her about any other chemists within the lab who had performance problems during the time Joseph worked for defendant.

While Joseph was employed in his limited-term position he received certain training. It is disputed whether Joseph received the same amount of training as other chemists received and whether the training was sufficient to permit him to qualify and complete his IDC.

## 2. Permanent Positions For Which Joseph Was Not Hired

Joseph interviewed for a total of eight permanent positions and bid on two positions for which he did not receive interviews; he was not hired for any of the permanent positions for which he interviewed or bid.

Before starting his limited-term position, Joseph interviewed for two permanent positions. In August 2004, Joseph went on the first of several interviews for permanent Chemist I and II positions with the DEP's Bureau of Laboratories. He received notice of his rejection of these positions via letters dated September 3, 2004 and October 5, 2004; both positions were filled by other candidates interviewed at the same time and by the same people as Joseph.

After beginning his limited term position, Joseph interviewed for six other Chemist positions with the DEP's Bureau of Laboratories. He received notice of his rejection of four of these positions via letters dated November 29, 2004, December 21, 2004, February 10, 2005 and

4

March 16, 2005. It is disputed whether he received verbal notice of his rejection of Chemist I Position 112412 from Ms. Taruletta Upadhyay, his interviewer for that position, in February 2005. There is no evidence as to when Joseph received notice of his rejection for Chemist I Position 87188, which he interviewed for on March 4, 2005, coincidentally his last day in his limited term position. Each of these six positions were filled by other candidates interviewed at the same time as Joseph.

Joseph bid on two other positions for which he did not receive interviews and for which he was not hired. It is unknown when Joseph received notice that he would not be interviewed for these positions and/or that these positions were filled. Both of these positions were filled by other candidates; one successful candidate, Deborah Miller, began work on December 27, 2004 in the same section and room as Joseph; the other successful candidate, Bethany Piper, began work on January 22, 2005.

During the time period Joseph was employed by defendant, he waived eligibility for two other positions: a laboratory safety position and a traveling chemist position.[1] Joseph waived the two positions because he wanted a job involving chemical analysis and was not interested in traveling farther than his current 110-mile daily commute.

Joseph believes he was "denied similar terms, privileges and conditions of employment as other similarly situated employees on the basis of his race and national origin." Am. Comp. ¶ 21. Joseph also believes he was not hired for any of the positions in which he expressed interest because of his race and national origin. Am. Comp. ¶ 22.

---

[1] Joseph does not specify by position number which positions he waived.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party moving for summary judgment has the burden of demonstrating that there are no genuine issues of material fact. Id. at 322-23. If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial. See Anderson, 477 U.S. at 255.

When a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). However, the "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against" the moving party. Ely v. Hall's

Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978), citations and quotation marks omitted.

**DISCUSSION**

At the outset, I must address objections Joseph raises in his Statement of Undisputed

Facts Opposing Defendant's Statement of "Undisputed Facts" and in his Memorandum of Law

Opposing Defendant's Motion for Summary Judgment. After dispensing with these objections, I

will proceed to address the defendant's motion.

**A.      Joseph's Objections to Defendant's Use of Certain Declarations and Depositions in Support of Its Motion for Summary Judgment**

**1.      Defendant's Declarations**

Joseph objects to defendant's use of any and all declarations "that directly contradict

30(b)(6) testimony" in defendant's motion for summary judgment and requests that these

declarations be stricken. He cites State Farm Mutual Auto Ins. Co. v. New Horizon, Inc., 250

F.R.D. 203 (E.D. Pa. 2008) in support of his request. The facts, reasoning and holding in State

Farm do not support Joseph's position and therefore I will deny plaintiff's request.

In State Farm, the defendants moved for summary judgment relying on a statement that

State Farm's corporate designee made in his 30(b)(6) deposition. Defendants argued that the

Court could not rely on any other evidence which contradicted this testimony "regardless of when

acquired, how weighty, and how meritorious the explanation of why it was not offered earlier."

Id. at 213. This Court found that "[i]n some cases 'where the non-movant in a motion for

summary judgment submits an affidavit which directly contradicts an earlier [Rule 30(b)(6)]

deposition and the movant relied upon and based its motion on the prior deposition, courts [have]

7

disregard[ed] the later affidavit.'" Id. at 212-13, quoting Hyde v. Stanley Tools, 107 F. Supp. 2d 992, 993 (E.D. La. 2000); see, e.g., Rainey v. Am. Forest & Paper Ass'n, Inc., 26 F. Supp. 2d 82, 95 (D.D.C. 1998) ("[T]he Kurtz affidavit's quantitative assertion works a substantial revision of defendant's legal and factual positions. This eleventh hour alteration is inconsistent with Rule 30(b)(6), and is precluded by it."). The reason for this rule is clear: a non-movant on a motion for summary judgment should not be able to defeat the motion by switching its prior position at the last minute. This Court in State Farm, however, denied the defendants' motion for summary judgment because it found that it could rely on thousands of other documents presented by the plaintiff which supported its position even though the documents contradicted the plaintiff's 30(b)(6) witness's statement.

Unlike the cases cited by State Farm which found only that a non-movant cannot defeat a summary judgment motion by contradicting its earlier 30(b)(6) testimony, here the movant–defendant– seeks to introduce affidavits of its 30(b)(6) witnesses. These declarations will be admitted because the declarations will only do one of three things: (1) make statements that are consistent with the declarant's prior 30(b)(6) testimony; (2) make statements inconsistent with the declarant's prior 30(b)(6) testimony, thus providing Joseph with an opportunity to demonstrate that there is a material issue of fact in dispute; or (3) make a new statement which is neither contradicted nor uncontradicted by the witness's prior 30(b)(6) testimony. With respect to the third set of statements, to the extent Joseph objects to them because they are "new discovery" I find this reason unpersuasive; Joseph had an opportunity to ask questions and elicit the responses at the deposition. In fact, Joseph has used the opportunity created by defendant introducing the declarations at the motion for summary judgment stage to identify several

inconsistencies in those witness's prior deposition testimony. Therefore, I will not strike defendant's declarations.

### 2. Defendant's Depositions

Joseph also objects to the depositions of Wilt and Moseley on the grounds that counsel for defendant made repeated and "inappropriate" speaking objections, and "sought to counsel her client and provide testimony." It is inappropriate for an attorney to interrupt a deposition and influence her client's testimony. <u>Hall v. Clifton Precision</u>, 150 F.R.D. 525 (E.D. Pa. 1993). After review of the page numbers in the deposition transcripts cited by Joseph (upon which each of counsel for defendant's objections appear), I conclude that counsel for defendant did not inappropriately interrupt the deposition or influence the witness's testimony. Joseph's objections to the depositions of Wilt and Moseley are unsupported and I will overrule them.

Finally, Joseph makes a passing argument that counsel for defendant "warned her client not to provide any facts gleaned from her" but provides no reference to where and in what context such a warning was given. Since I have no indication from Joseph in which deposition--if it were at a deposition--this occurred, I find Joseph's objection unsupported and will overrule it.

### B. Joseph's Title VII Claim

Joseph was hired for a limited term position and alleges that he "was denied similar terms, privileges, and conditions of employment as other similarly situated employees on the basis of his race and national origin." Am. Comp. ¶ 21. Joseph also claims defendant discriminated against him on the basis of his race and national origin when he was interviewed by defendant more than eight times between July 2004 and March 4, 2005 for a permanent

position but was never hired.

### 1. Portions of Joseph's Claims Are Time Barred

Defendant argues that part of Joseph's Title VII claim is barred because he failed to exhaust his administrative remedies in a timely manner. Section 2000e-5(e)(1) requires a Title VII plaintiff to file a charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred" when the plaintiff has also filed a charge with Pennsylvania Human Relations Commission. The Supreme Court in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) interpreted what it means for an "unlawful employment practice" to have "occurred." With respect to "discrete acts such as termination, failure to promote, denial of transfer, or refusal . . . [e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180 - or 300 - day time period after the discrete discriminatory act occurred." Id. at 113.

Here, it is undisputed that Joseph's EEOC Charge Questionnaire at Docket Number 170-2006-00783 was signed by Joseph on December 27, 2005. Thus, the "unlawful employment practice" must have "occurred" on or after March 2, 2005--300 days before December 27, 2005--in order to be timely filed.

Joseph interviewed for eight permanent positions within the DEP for which he was not hired. It is undisputed that Joseph received defendant's rejection letters within three days of the date appearing on the rejection letters. Defendant moves for summary judgment on five of these

positions on the grounds that Joseph received the rejection letters prior to March 2, 2005. Joseph does not dispute that he received the letters for the following positions for which he interviewed within three days of the date indicated:

| Position | Rejection Letter Date |
| --- | --- |
| Chemist 2 Position 122771 | September 3, 2004 |
| Chemist 1 Position 122762 | October 5, 2004 |
| Chemist 2 Position 023454 | November 29, 2004 |
| Chemist 1 Position 112514 | December 21, 2004 |
| Chemist 1 Position 128249 | February 10, 2005 |

Joseph did not interview for Chemist 1 Position 49614 which was awarded to Deborah Miller who began work December 27, 2004. It is undisputed that after she was hired, Miller sat in the same section and room as Joseph. Defendant argues that because Miller and Joseph worked in such close proximity, Joseph must have known prior to March 2, 2005 that the position was filled. Joseph provides no evidence to the contrary, nor does he even argue otherwise.

Because the alleged unlawful employment practices of not hiring Joseph for the five positions for which he interviewed and for the one position for which he did not receive an interview occurred more than 300 days before Joseph filed his EEOC Charge Questionnaire, I will grant defendant's motion for summary judgment as to these six claims of failure to hire.

Joseph responds arguing that his claim was timely filed and relying on the Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111-2, amending 42 U.S.C. § 2000e-5(e). The FPA's "purpose was to reinstate the law regarding the timeliness of *pay compensation claims* as it was prior to the Ledbetter decision, which Congress believed undermined statutory protections

against *compensation discrimination* by unduly restricting the time period in which victims could challenge and recover for discriminatory *compensation decisions*." Mikula v. Allegheny County of PA, 2009 WL 2889742, at * 2 (3d Cir. 2009), emphasis added. In her dissent to the Ledbetter decision, Justice Ginsburg explained the difference between compensation claims and discrete acts of discrimination:

> Pay disparities often occur . . . in small increments; cause to suspect that discrimination is at work develops only over time. Comparative pay information, moreover, is often hidden from the employee's view. Employers may keep under wraps the pay differentials maintained among supervisors, no less the reasons for those differentials. Small initial discrepancies may not be seen as meet for a federal case, particularly when the employee, trying to succeed in a nontraditional environment, is averse to making waves.
>
> Pay disparities are thus significantly different from adverse actions "such as termination, failure to promote, . . . or refusal to hire," all involving fully communicated discrete acts, "easy to identify" as discriminatory . . . .
>
> The realities of the workplace reveal why [compensation discrimination] does not fit within the category of singular discrete acts "easy to identify." A worker knows immediately if she is denied a promotion or transfer, if she is fired or refused employment. And promotions, transfers, hirings, and firings are generally public events, known to co-workers. When an employer makes a decision of such open and definitive character, an employee can immediately seek out an explanation and evaluate it for pretext. Compensation disparities, in contrast, are often hidden from sight.

Ledbetter v. Goodyear Tire & Rubber Co., Inc., 550 U.S. 618, 645 and 649 (Ginsburg, J., dissenting), citing Morgan, 536 U.S. at 114; see also Harris v. Auxilium Pharm., Inc., 2008 WL 3157275, at *30-31 (S.D. Tex. 2009), holding,

> As Justice Ginsburg's dissent makes clear, compensation claims, like hostile work environment claims, are fundamentally different from claims based on "discrete facts" because the discrimination accumulates over an extended period of time. Plaintiffs are often initially unaware that they are being paid an unequal wage: the

discrimination can take years to identify. The same cannot be said for failure to promote claims.

Joseph provides no authority to support his implied assumption that a failure to hire constitutes a compensation decision. Therefore, the Ledbetter Act is inapplicable to Joseph's claims of discrimination based on defendant's failure to hire him.[2]

## 2. Indirect Evidence of Discrimination

Joseph filed a claim of national origin and race discrimination under Title VII. A plaintiff may demonstrate national origin discrimination with either direct evidence, Anderson v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002), applying the standard set forth in Price Waterhouse v. Hopkins, 490 U.S. 228 (1989), or with indirect evidence under the burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Because Joseph has not argued that there is direct evidence of discrimination, I need only determine whether there is indirect evidence of national origin and/or race discrimination. Under McDonnell Douglas, the plaintiff must first satisfy the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Id. at 802. If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Id. If the defendant comes forward

---

[2]     Joseph's attempt to make out a continuing violation doctrine argument to support his position that his failure to hire claims are not time-barred is also rejected because he appears to base this argument on an equal pay violation. While certain of Joseph's failure to hire claims were timely filed and his claim of discrimination in the terms of his employment–relating to his training–was timely filed, "Morgan foreclosed the use of the continuing violation doctrine to incorporate untimely claims for discrete discriminatory actions even though they may be related to a timely claim." Mikula, 2009 WL 2889742, at * 4, quoting Hildebrandt v. Illinois Department of Natural Resources, 347 F.3d 1014, 1027 (7th Cir. 2003). I also note that Joseph has not made out an equitable tolling argument. Thus, this exception will not affect my decision.

with such reasons, then the burden shifts back to the plaintiff to prove that the legitimate reason proffered by the defendant was pretextual. Id. at 804. At all times, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff. Sarullo v. U.S. Postal Service, 352 F.3d 789, 799 n.10 (3d Cir. 2003); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

      a.      **Joseph's Prima Facie Case**

The plaintiff carries the initial burden under Title VII of establishing a prima facie case of national origin and racial discrimination. Typically, in failure to hire cases, "[t]his may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." McDonnell Douglas, 411 U.S. at 802, see also Hoechstetter v. City of Pittsburgh, 248 F. Supp. 2d 407, 409-410 (W.D. Pa. 2003) and Mock v. University of Pittsburgh at Johnstown, 2007 WL 2253602, at *20 (W.D. Pa. 2007) applying this test in a failure to hire context. However, to raise an inference of discrimination, Joseph does not have to show that the position remained open "because the Supreme Court has not described the fourth element of a prima facie case so narrowly." Helm v. Matrix Svc. Indus. Contractors, 2008 WL 4889013, at * 11 n.22 (E.D. Pa. Nov. 12, 2008), citing Pivorotto v. Innovative Systems, Inc., 191 F.3d 344 (3d Cir. 1999); see also McDonnell Douglas, 411 U.S. at 802 n. 13 stating, "[t]he facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." Thus, the plaintiff may demonstrate

the fourth element of his prima facie discrimination case by showing that the employer treated a similarly-situated person who is not within the protected class differently than the plaintiff. See Red v. Potter, 211 Fed. Appx. 82, 84 (3d Cir. 2006), citing Kosereis v. Rhode Island, 331 F.3d 207, 214 (1st Cir. 2003), stating that "a plaintiff must show that others similarly situated to him in all relevant respects were treated differently by the employer," and Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994), stating in order to show that an employee is "similarly situated," all of the relevant aspects of employment need to be nearly identical. The plaintiff may also satisfy the fourth element by showing other circumstances that give rise to an inference of unlawful discrimination. See Sarullo, 352 F. 3d at 798, finding that the plaintiff need not necessarily establish that similarly-situated employees were rehired but "he must establish some causal nexus between his membership in a protected class and the decision to not rehire him." However, while evidence that the employer hired a less qualified person can support a finding of unlawful discrimination, this fact alone is insufficient to create an inference that the failure to hire was a result of discrimination. Vereen v. Woodland Hills School Dist., 2008 WL 794451, at *19 (W.D. Pa. 2008), quoting Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

For purposes of its summary judgment motion, defendant concedes that Joseph satisfies the first three elements of his prima facie case of discrimination: (1) Joseph is a member of a protected class, i.e. his national origin is Indian and his race is Asian/Indian; (2) Joseph was qualified for the positions for which he was not hired; and (3) he suffered an adverse employment action when he was not hired. The parties disagree as to whether Joseph has met his burden with respect to the fourth element of his prima facie case.

### i.    Claim of Discrimination in Limited-Term Position

Joseph alleges that he "was denied similar terms, privileges, and conditions of employment as other similarly situated employees on the basis of his race and national origin." Am. Comp. ¶ 21.  In his opposition, he argues that Wilt discriminated against him on the basis of his race and national origin with respect to the training he received while working for her. Defendant responds to this claim by arguing that there is no indirect evidence of discrimination with respect to the alleged discrepancy in training that Joseph received.  There is a disputed issue of fact with respect to how much training Joseph actually received.  Assuming Joseph did not receive the same amount of training as other new chemists under Wilt's supervision, defendant argues that this can be attributed to the fact that Joseph had more education and experience than other new chemists.  One reason Wilt cited for hiring Joseph for the limited term position was that his "experience and academic training makes [sic] Mr. Joseph the ideal candidate for this position because he will require minimal training on use of the equipment and methodology." Def. Exh. SJM-10.  She testified that she hired Joseph because of "his years of experience in the laboratory; the fact that he held a Ph.D. in analytical chemistry; that he had computer knowledge. And all of those things would mean that Mr. Joseph would require less on-the-job training than others that did not have the experience and education."  Wilt dep. 19.   Joseph knew this was the reason he received less training.  He stated in his deposition that, "I think a lot of the mistake is [Wilt] assumed that I was supposed to know [the software]."  Joseph dep. 232.  The reason Joseph was given less training is undisputed--it was assumed he did not need it.  That reason does not raise an inference of discrimination.  Joseph has presented no other indirect evidence of discrimination.  Therefore, I find that Joseph has failed to meet his burden of proving his prima

facie case on this claim.

ii.      **Non-Time Barred Failure to Hire Claims**

The three non-time-barred permanent positions for which Joseph interviewed[3] are

| Position | Interview Date | Awarded To |
|---|---|---|
| Chemist 1 Position 112412 | January 25, 2005 | Quazi |
| Chemist 1 Position 65157 | Late January or Early February, 2005 | Shaw |
| Chemist 2 Position 87188 | March 4, 2005 | Kukosky |

Defendant argues that this Court should disregard the hiring of Quazi as indirect evidence of discrimination because she "is from India, is Asian or Asian/Indian, and has the features of a person from India." Def's Mot. Summ. J. 11. Joseph does not dispute that Quazi who was hired to fill the Chemist 1 Position 112412 is a woman who, like him, is from India and thus her national origin is Indian. Plaintiff disputes that Quazi is the same race as he. In fact, the deposition testimony of Upadhyay, upon which defendant relies in its Statement of Undisputed Facts, states that she does not know Quazi's race because there are many races in India. Upadhyay dep. 24-26. Defendant has presented Quazi's Equal Employment Review Certificate

---

[3] Joseph's complaint does not allege nor does his opposition to defendant's motion for summary judgment argue that defendant discriminated against him because he was not interviewed for the Chemist 2 Position 47140 for which he bid. That position, which was awarded to Bethany Piper, required overnight travel. Joseph states in his complaint that he waived eligibility for another position that required more travel than his already 110 mile commute. Even if Joseph did allege discrimination with respect to this failure to interview and was able to make out a prima facie case, Joseph has not even attempted to demonstrate that defendant's proffered legitimate reasons for hiring Piper, i.e. that she had more seniority and he did not score within 5 points on his Civil Service Exam of her score, is pretextual. Thus, this position will not be considered as a potential instance of discrimination.

which indicates her race is "Asian/Pacific Islander." Def.'s Exh. SJM-45. I will construe the facts in the light most favorable to Joseph and assume that Quazi is not a member of the same race as he, i.e. Asian Indian. Therefore, her hiring is not excluded from consideration of indirect evidence of discrimination on the basis that she is the same race as Joseph; her hiring is excluded as indirect evidence of national origin discrimination. Quazi and Joseph were similarly-situated because they were interviewed by the same people for the same position; Joseph has proved his prima facie race discrimination claim with respect to the Quazi hiring because her hiring raises an inference of discrimination.

Shaw and Kukosky are not members of the same race or of the same national origin as Joseph. Defendant argues that this Court should disregard the hiring of Kukosky as indirect evidence of discrimination because Joseph and Kukosky are not similarly-situated. Joseph does not dispute that defendant's policy of giving veterans preference was utilized in the selection of Kukosky. Joseph does not allege that he is a veteran. Thus, Joseph and Kukosky are not similarly-situated persons and indirect evidence of discrimination cannot be inferred from the comparison of Joseph and Kukosky. Defendant's motion to for summary judgment is therefore also granted with respect to Kukosky because plaintiff is unable to make out his prima facie case.

With respect to the hiring of Shaw, defendant argues there are no circumstances surrounding her hiring which give rise to an inference of discrimination. Shaw and Joseph were similarly-situated because they were interviewed by the same people for the same position; Joseph has made out his prima facie race and national origin discrimination claims with respect to the Shaw hiring because her hiring raises an inference of discrimination.

### b. Defendant's Proffered Legitimate Business Reason

If the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas, 411 U.S. at 802. Title VII "does not require covered employers to hire or select the most qualified applicants when vacancies arise. What matters is whether the [employer] failed to select [the plaintiff] because of [his national origin] or race, not whether the [employer's] decision not to select [him] was 'wise, shrewd, prudent or competent.'" Vereen, 2008 WL 794451, at *19, quoting Fuentes, 32 F.3d at 765.

Joseph has succeeded in proving his race and/or national origin discrimination claims with respect to defendant's failure to hire him for the Shaw and Quazi positions. Defendant proffers as its legitimate business reason for not hiring defendant the fact that Upadhyay, who interviewed both Joseph and Quazi, determined that Quazi's interview responses were better than Joseph's responses. Joseph objects to the use of defendant's interview notes because they do not reflect his verbatim responses. During his deposition in which he was questioned about Upadhyay and Webb's interview notes, however, Joseph responded that he did not question that the notes were a fair summary of his response, that "[he] just said whatever is here" and that he did not question their veracity. Joseph dep. 187-97, Exh. D-8. Furthermore, defendant argues Upadhyay did not rank Joseph because she knew from informal discussions with Wilt and McGarvey that his work performance was poor. Finally, Upadhyay recommended Quazi because of her background as a chemistry teacher with limited laboratory experience, her organization skills, knowledge of how to maintain lab equipment and work with a team. These reasons are legitimate and nondiscriminatory and rebut Joseph's prima facie case.

With respect to the hiring of Shaw, McGarvey, who interviewed both Shaw and Joseph, ranked another candidate, Aleshkevich, first. She turned the position down and it was then offered to Shaw. McGarvey's decision not to rank Joseph was based on his interview responses and her discussions with her supervisor, Lyter, who also participated in the interviews. She also knew from discussions with Wilt that Joseph was having difficulty in his limited-term position and as of late January/early February 2005 he still had not qualified to perform routine analyses. He did not address these work problems in his interview. On the other hand, Shaw demonstrated that she had essential laboratory analytical skills and was the only interviewed candidate with direct experience using the automated analyzers operated by chemists in the vacant position and the only interviewee with experience performing routine analytical testing of a large volume of samples. Again, these reasons are legitimate and nondiscriminatory and rebut Joseph's prima facie case.

### c. Defendant's Proffered Reason is Not Pretextual

The burden shifts back to Joseph to prove that the legitimate reasons proffered by defendant are pretextual. The sole argument Joseph raises in his opposition to demonstrate defendant's reasons are pretextual is the fact that Wilt told Upadhyay and McGarvey that Joseph had "performance" problems in the lab but that Wilt did not share with Upadhyay and McGarvey any performance problems with any other chemists. These performance problems were related to Joseph's allegations that the instruments to which Wilt assigned him had problems preventing him from qualifying and obtaining his IDC.[4] Whether instrument failure is the true cause that

---

[4]      Joseph does not allege or argue that Wilt intentionally assigned him to instruments which allegedly had problems. In fact, when Joseph had problems on the first instrument to which he was assigned, Wilt assigned him to a new one. Furthermore, Joseph recognizes that

prevented Joseph from qualifying is irrelevant for purposes of this analysis. Joseph fails to present any evidence that Wilt was aware of performance problems with other chemists who are not members of the same protected classes as Joseph and who interviewed with Upadhyay and McGarvey. Even assuming Wilt knew that instrument problems or her failure properly to train Joseph properly were the reasons preventing him from qualifying, Joseph has presented no evidence showing that her failure to explain that to Upadhyay and McGarvey demonstrates she was attempting to influence his interviews because of his race or national origin. Most importantly, Joseph does not provide any evidence that Upadhyay, McGarvey or their supervisors--who were the ultimate decision-makers with respect to the two relevant positions for which Joseph interviewed--failed to hire him because of his race or national origin. I fail to see how Wilt's conversations with Upadhyay and McGarvey demonstrate the defendant's proffered reasons are pretextual and the true cause of defendant's failure to be hired was discrimination. Furthermore, Wilt was the decision-maker who initially hired Joseph for his limited-term position; although this fact alone could not preclude a finding that she later discriminated against him it certainly supports a finding that defendant's true reason for not hiring him was based on his race or national origin. Joseph's entire theory about his national origin and race playing a role in the decision not to hire him appears to be based only on his subjective beliefs. Joseph's subjective beliefs alone are not sufficient to establish an inference of discrimination or that defendant's proffered legitimate business reasons are pretextual. See Nelson v. DeVry, Inc., 2009 WL 1213640, at *8 (E.D. Pa. 2009). Therefore, I will also grant summary judgment for defendant on Joseph's last two claims of discrimination. An appropriate Order follows.

---

Wilt helped him to troubleshoot the problems, a task which was part of his job description.